[Note. Cases cited under this title will be found arranged alphabetically under the names of the cities; e. g. "City of Brownsville v. Cavazos. See Brownsville v. Cavazos."]

---

## Case No. 2,744.

### The CITY OF BALTIMORE.

[5 Ben. 474;[1] 5 Amer. Law T. 25.]

District Court, S. D. New York. Jan., 1872.

MARINE TORT—RUNNING OVER A SEINE—NEGLIGENCE.

1. A steamship, coming into New York, in charge of a pilot, ran over a seine, in which had been inclosed a quantity of fish which are caught for the manufacture of fish oil and guano. A libel was filed against her, to recover

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

damages: *Held*, that, inasmuch as it appeared that the steamship was in a regular course of navigation, and that the seine was in such a part of the channel that, if the steamship had deviated to go around it. she would have been in danger of grounding, the seine was an obstruction to navigation;

2. As the seine was put in the way while the ship was in sight, coming in, and as no negligence was shown on the part of the ship, the libel must be dismissed.

In admiralty.

Smith & Cole, for libellants.
J. W. Gerard, Jr., for claimants.

BLATCHFORD, District Judge. The libel alleges, that, on the 21st of October, 1869, the libellants were the owners of a vessel, fitted up as a manufactory of fish oil and guano, at Sandy Hook, and employed constantly in said business about forty-five laborers, and were also the owners of a large seine, employed by them, in taking the fish used in the factory; that, on that day, while the laborers were employed with the seine in the ocean, opposite Sandy Hook, and after they had secured a large number of fish in the seine, and were taking them out, the steamship City of Baltimore, negligently and wilfully and wantonly, came upon them, ran over the seine, tore it in pieces and let out the fish; that this occurred in the day time, and on the open sea; that the seine was in no channel where it was necessary for the steamship to go; that there was no negligence on the part of the laborers; that the damage to the seine was $200, the number of fish secured at the time, and thus lost, was 50,000, and their value $300, and there was a further loss of $500, in the suspension of the libellants' business, while the seine was being mended.

The answer avers, that the steamship was at the time completing a voyage from Liverpool to New York, and pursuing the regular and ordinary channel from Sandy Hook to the city of New York, in charge of a duly licensed pilot, and, if she came in contact with the seine, it was owing to its being in the channel, in an unlawful and improper place, and any loss occasioned to the libellants proceeded from negligence on the part of their laborers, in placing, anchoring or hauling the seine.

The burden of proof is on the libellants, to make out the negligence alleged. I am not satisfied that they have done so. On the evidence, it is not established that the ship could have gone further to the westward than she did, without danger to herself. She drew eighteen feet of water, and was in a narrow channel, where, with the tide running, she was obliged to keep under headway. Under the circumstances, the seine was an obstruction to navigation, if the ship, in deviating to avoid it, would have been in danger of grounding. The weight of the evidence tends to this conclusion.

Besides, the seine was put in the way while the ship was in sight, coming in. She was pursuing her regular course of navigation, and I do not think any negligence on her part is established. The libel is dismissed, with costs.